Good morning, Your Honors. I'm Robert Mann. I represent the appellant Ho Jun Sin. Mr. Mann, you're going to have to speak up. That's not a microphone in front of you. It's basically for the recording system. Okay. I see this case as raising a couple of very important issues. One is whether there is any real limitations on the requirement that to arrest someone or to convict someone of making a terrorist threat, here the allegation was under California Penal Code Section 422, that there has to be some objective reason to believe that it is a real threat, as this Court required in Orozco-Santillan years ago. And secondly... That was a criminal case, though. Right. But it's the same difference, if I may say so. Well, in this case, we are reviewing a 1983 case. Is that correct? Correct. And so the cause of action is one for violation of due process? No, it's a violation of the Fourth Amendment. It's an arrest without probable cause. And so we're looking at whether or not the determination of probable cause was unreasonable. Correct. Okay. And so how was the determination of probable cause unreasonable in this case?  Right. The question is, I think the question is whether or not the police have to do something to determine whether or not there is an objective basis for believing that this threat is reasonable. Have to do something like what? Well, typically in these cases, on the criminal side, what they look at is the relationship between the victim, the alleged victim, and the alleged perpetrator. They look at what the victim knew about the perpetrator. They look at the perpetrator's history as known to the victim, and as the perpetrator would know that the victim... So, for example, if you have a husband who's beaten up his wife in the past, and he comes and says, I'm going to kill you, then the threat is reasonable. That is, the victim is reasonable in believing that the threat is real because of the past history. But counsel, isn't the standard for probable cause just a reasonable basis to believe that a crime has been committed and that the person who's arrested is the one who committed that crime? That's absolutely correct. And there's no requirement for a full-fledged investigation at that point, is there? Well, it depends on what the circumstances are. This court has held that where, for example, you have a victim who obviously has a grudge, or a victim under other circumstances where it's unclear whether or not there has been a crime committed, that there has to be an investigation. Here we have a 98-pound wheelchair-bound childhood polio victim who is an employee of this casino whom everybody knows is honest. He has integrity. He is not aggressive. He's never threatened anybody. He's never hurt anybody. He's never done anything except play poker. And all of a sudden, this poker dealer, for reasons that are difficult to understand, whether it was a preexisting grudge against Koreans, whether it was a misunderstanding of the case based on the fact that Mr. Sin hardly speaks English at all, whether it was a combination of factors, claims that Mr. Sin says, I'm going to kill you. And the police come out. They do not know that it requires more than the words. And the poker dealer is saying, I'm afraid to constitute the crime. They don't talk to the other people sitting at the poker table who would have told the police that it never happened. They don't look at the videotape. Let me ask you this. If the police had talked to the other people and they said it never happened, would it be your view there was not probable cause because there were two stories? Under the circumstances of this case, there was not probable cause because nobody in their right mind, if they had done any kind of an investigation, would have concluded that this threat could possibly have been real. Given who Mr. Sin was, given who Ms. Whittle was, given what was visible on the videotape of the whole thing, if you bothered to look at it, there absolutely was no reason to believe that this threat was real. Is your argument that it has to be a threat coupled with the present ability to carry it out? I don't think that it has to be right now, but it has to be. It has to be. I think that that is a requirement, but I don't think it has to be this minute. I think it is a requirement. But isn't that the definition of assault? So haven't you now turned the separate substantive offense of making a threat into the commission of an assault? I don't believe so. It has to be under the California statute on its face and under the circumstances as so unequivocal and unconditional, immediate and specific, as to convey the person's threat and the gravity of purpose and an immediate prospect of execution, immediate prospect of execution. I don't think that means right this second, but there has to be an immediate prospect of execution. Here we have two strangers. Mr. Sin doesn't know Ms. Whittle from anybody. He doesn't know where she lives. He doesn't know where he can find her. He has no way of carrying out this alleged and probably nonexistent threat. It was probably. Your position is that if the victim says he told me he was going to kill me and I believed him, I thought he was serious. That's not enough. Absolutely not enough. Counsel. Absolutely. And that's the mistake. Counsel. Okay. I'm going to ask you a question. Right. Okay. You have filed a brief raising 13 issues, haven't you? I didn't go back and count them, but there were several, yes. Have you read your brief again? I read it again this morning. What point are you arguing now? Which one of those 13 points? The point I'm really arguing now is. Which one of the 13 points are you arguing? I'm arguing the jury instruction point. All right. The jury instruction point. The court instructed. You're arguing your fourth point. Correct. Did the court properly instruct the jury on how to determine probable cause? Right. All right. Right. Okay. How did the jury, how did the judge instruct and how should he have instructed? The judge instructed the jury that, quote, threats of serious bodily injury and or death is a public, is a felony and a public offense. The judge said that twice to the jury. The judge said, if you find that Zelleretta Whittle honestly and in good faith believed that Plaintiff Hojun's sin made threatening statements to her when she reported plaintiff's conduct to her supervisor, da-da-da-da-da-da-da, then you must find that there was reasonable cause to arrest the plaintiff. Though that is incorrect. Simply incorrect. I'm also saying. What should the instruction have been to answer the second part of the question? Well, what I proposed, and this is a question that actually is more important than how you interpret 422 and terrorist threats in general and how that relates to the First Amendment, is that the jury should not have been tasked with determining what as a matter of law constituted probable cause. That's a question for the Court. So you're saying there should not have been a probable cause instruction given at all? What I'm saying is that since the Supreme Court's case decision in United States v. Ornelas, that it is just as improper to let a jury decide what legally constitutes probable cause as it would be to let a jury in a civil case, as it would be to let a jury decide what constitutes probable cause in a civil case. Answer to the second part of Judge Aldris' question. My proposed instruction was that the jury not be given a broad probable cause instruction, but that the jury be asked specifically important facts which determined as a matter of law whether or not there was probable cause. And they were. It's at 351 of the record. My instruction was, and I want to point out that the judge rejected this entire methodology. The judge was of the view that the jury gets to determine based on a broad probable cause instruction what constitutes probable cause as a matter of law. Here's what you wanted the Court to instruct. A conclusion or hunch is not enough to establish probable cause. Police are required to reasonably investigate and are charged with knowing what they should have discovered before finding probable cause. It is not reasonable to arrest someone based solely on allegations of an individual who is known to the police to bear a grudge against the suspect. An officer may not justify his conduct based upon conformity with department policy or practice. Is that a fair analysis of what you wanted? Not exactly. Let me back. I have to back up one step. Those instructions were offered after the Court indicated that Judge Ray said he was not going to give the jury more fact-specific questions. The fact-specific questions that I wanted are, if you find that Officer Gonzales did not. Then I'm not fairly representing it. Well, you are and you're not. I mean, all I'm saying is that those instructions were my backup position. I am and I'm not. You're not helping me. I'm trying to help you, sir. I understand. Because the original question that was followed through by my colleague, Judge Rawlinson, the question put to you, what did the judge actually charge and what did you want the judge to charge? Do you remember that? I have it here in front of me. It's page 351. This is a copy of the excerpt of record. This is the instruction that I wanted given. The instructions that the Court, that Judge Alderson, Your Honor, has just referred to were the instructions that I offered after the Court refused the instruction at page 351. And my position is that the jury should have been instructed that if you find that Ms. Threttle was in sustained fear or if you determine that Ms. Whittle's alleged fear was objectively, did not determine that Ms. Whittle's alleged fear was objectively reasonable, or if you find that they did not reasonably investigate Ms. Whittle's allegations, you must find that there was not probable cause. Those were the issues. Was there sustained fear? Was it objectively reasonable? And did they adequately investigate? And once you know the answer to those questions, you can determine as a matter of law whether or not there's probable cause. When the judge said, I'm not going to do that, then I said, well, then you've got to tell the jury how you go about what the legal rules are for determining probable cause. And those are the instructions that Judge Alderson just read. And those are rejected as well. And so here I am in a position where the individual officers have already gotten out on qualified immunity so that the only thing left is the entity. And I put on evidence that this arrest was pursuant to the practice, the custom, the policy of the entity, and I asked for an instruction that says, but that's not a defense. That doesn't make it reasonable, which is absolutely correctly the law. Jury never hears that, you know. I asked for instruction that says when I go out there in a situation like this where the question is whether or not any reasonable person would take this alleged threat to be a real threat and that under those circumstances, the officers have to do some kind of a reasonable investigation. They can't just rely on what the victim said because that's the legal standard. Jury doesn't hear that. That's the legal issue. That's the jury instruction issue. That's what leads me to say that at 422, and the requirement that there be an objective threat, a threat that a reasonable person would really consider to be a threat, is going to have any meaning, then you have to do something to put that into practice legally. Because in this case, this was as far as you could go in looking at a situation where any reasonable person would look at this and say, you've got to be kidding. You've got a guy, a 98-pound guy in a wheelchair who doesn't know the victim. There's no previous relationship. He has no means of carrying it out. It's on videotape. There's people all around. And this was supposed to be a real threat? So if this isn't a case where you can say, you know, we've gone too far here with hauling people off to jail for what may be intemperate remarks or more likely exaggerated misunderstandings, this is it. And then we get to the point of this case that really troubled me, which was the closing argument of the defense lawyer, who started talking about all these other incidents and implying that you have to take every single possible threat seriously and lock people up, haul them off to jail. You don't think we should take every possible threat seriously? You can't arrest everybody for the words that they've spoken. I mean, there are legal, you know, it has to be a threat that somebody would take seriously. This was not a threat that should have been taken seriously if it was spoken at all. If they had talked to anybody, they would have concluded it probably never was spoken at all. It was a misunderstanding that certainly nobody could have taken this to be a threat that had any probability of being carried out. Did the poker dealer testify at trial? Sure. And did Mr. Sin testify at trial? Yes. And so the jury was able to hear both participants and their versions of what happened. Right. And so the jury obviously credited the poker dealer when she said she took it seriously and she was frightened. Why should we disregard that? Well, even if the poker dealer took it seriously and was frightened, that doesn't make it a crime. And everybody should know that that doesn't make it a crime. And that was the basic problem here. The police came out and they didn't know that that doesn't make it a crime. Now, when you say it doesn't make it a crime, are you saying there was insufficient evidence to support the charge? I think there was. I mean, I made a motion for summary judgment myself. What's the answer to my question? Yes. You're making that argument. I don't think I can make that argument here because I didn't make a Rule 50 motion. I made a – You keep arguing that this was not a crime, but you did not argue that in your brief, did you? That's correct. Of the 13 points, you did not say there was insufficient evidence to support the crime as charged. That's correct. You did not argue that. I think you're arguing that now. Well, I am. I mean, the reason I didn't argue – You didn't do it in your brief. Because I failed to make a Rule 50 motion. I made a motion for summary judgment before the trial began, but when I rested, when the parties rested, I failed to make a Rule 50 motion, so I can't make that argument. I'm procedurally barred from making that argument. So perhaps you should argue something that you did present. That's why I'm arguing the jury instructions. That's why I'm arguing – That's why I'm arguing the admissibility of the evidence. That's why I'm arguing the impropriety of the argument that the defendant's lawyer made, bringing in all these other alleged incidents that were not in the record, to really inflame the jury and to prejudice Mr. Sin was the only reason for that. It was totally – I mean, that's how I lost this case, is because of that argument. That was the turning point. What evidence in the record do you have that that's the reason the case was lost? You can't go to the jury and ask the jury those questions. I'm sitting there, and I know it when I see it. And these arguments were totally below the belt. I've never ever in my career as a lawyer seen anything that I thought was so offensive as what happened here with regard to these arguments. So unless the Court has some questions, I'd like to reserve whatever time I have. You've got about a minute and 48 seconds. Thank you. Okay, Mr. Mann. Thank you. Counsel. Good morning, Your Honors. My name is Chin Choi. I represent the City of Compton in this case. I believe the Court caught the same thing that I did, which was when Mr. Mann started speaking, I was somewhat confused, because it seemed like a lot of these arguments were not raised in the briefs. And the first note I made to myself was that these arguments are totally afield and they're not supported by the record. One thing that he did mention, which was raised in the briefs, was the supposed application of the Supreme Court case Ornelas v. United States and how that case mandates that juries in civil rights actions not consider or make probable cause determinations at trial. Ornelas did not say that. Ornelas simply said appellate courts have the duty to review criminal trial courts' Fourth Amendment rulings in order to help shape and contour the law in that area. It said nothing about juries in civil rights actions not addressing the issue of probable cause at trial. And in fact, just yesterday afternoon, I noticed the Ninth Circuit published an opinion just this past Friday on August 1st. The name of the case is Graves v. City of Coeur d'Alene, C-O-E-U-R. Oh, Coeur d'Alene. I'm sorry. I'm not from the northwest. No, I'm not, Your Honor. And in that case, in footnote 21, I'll just read directly from the footnote, and this was a Fourth Amendment qualified immunity police officer case. It says, in Section 1983 claims, the existence of probable cause is a question for the jury, if reasonable persons might reach different questions on the facts. And it cites Smitty v. Varney, which is an older Ninth Circuit case that we cited in our briefs. So I don't think there's any basis for the plaintiff's very novel contention that the district court made some dramatic error by having the jury decide the issue of whether or not there was probable cause for the plaintiff's arrest. I wanted to answer the argument that he made. He opened his argument and devoted a lot to it, saying, sure, the judge should have decided that issue himself or herself and not the jury. But when it came to instructing the jury, the jury, the court erred. He spent a lot of time in that argument. Now, why don't you answer that argument? Certainly, Your Honor. In the appellant's opening brief, they seemed to refer to instruction regarding probable cause that they contend was insufficient. In our brief, we made very clear that the full instruction which was given regarding probable cause with respect to the cause of action against the city of Compton was very complete. I don't want to read the whole instruction here, but it addressed very well-established principles regarding what probable cause constitutes. It also addressed all the elements of making a terrorist threat under California law. Not surprisingly, that instruction is not part of the appellant's record. So we made it part of the record. That instruction itself is complete. These additional instructions regarding hunches, regarding whether or not the investigation was complete, it was not an abuse of discretion by the district court in refusing to give those essentially supplemental instructions. And some of these instructions were not even supported by the record. In light of the fact that the jury was instructed that what they're supposed to look at is based on the totality of the circumstances, would a prudent officer find or could a prudent officer have believed that there was a fair probability that a public offense, i.e., making terrorist threats, was committed? That instruction more than covered all the bases that Mr. Mann is talking about. The jury could have considered the issue of, well, was the investigation sufficient? Was the officer acting upon the hunch? There's no evidence that he was acting upon the hunch. And the jury took into consideration, rightfully so, all the evidence which was presented, which was the officer came to the scene. He talked to a member of the security staff. He spoke at length with the victim. He testified that she seemed very serious. She wasn't making anything up. She was in fear. The officer also talked to the plaintiff. And after taking all those actions and whatever other observations he may have made during that 20 to 30-minute time period, he concluded, hey, there is a fair probability that a public offense was committed. And the jury had more than enough evidence to conclude that there was a fair probability that a prudent officer would have believed that there was probable cause an offense had been committed. Mr. Choi, does it make any difference that the initial arrest was a citizen's arrest under California law? I think that definitely helps our argument, Your Honor. Under California law, if someone makes a citizen's arrest, a police officer under state law is obligated to take that person into custody. I guess that's my understanding of the law. Without making the preliminary investigation that you say the officer did over a 20 to 30-minute period of time? I think if he – I'm not absolutely sure about this because in this case he could make additional investigations. He did not rely solely on the fact that Ms. Whittle completed a citizen's arrest warrant. In addition to that, he interviewed Ms. Whittle, LA. He interviewed the plaintiff. He was not obligated under state or federal law to interview every single person in the casino. Let me just ask a question. Neither one of you talked about this in your briefs. And although I am aware of the provision for citizen's arrest, I frankly have not seen very many cases where the initial arrest was actually made by a citizen. And I would be interested to hear from both of you with regard to whether or not that makes a difference. Is there some sort of mandatory statutory duty that the officer take the person into custody once the dealer announces that she has made the arrest? Or must he make an independent determination? Mr. Mann, correct me on this. My understanding of the state law is that once someone completes and executes a citizen's arrest warrant, the police officer is required under statute to take that person into custody. And I think the reason that it wasn't directly addressed in either of our briefs was that we're dealing with federal claims here. But it is a component of the qualified immunity finding made by the district court. The district court said that under the circumstances that Officer Gonzalez faced, based on the actions he took, based on the fact that Ms. Whittle completed a citizen's arrest warrant, based on the information that Ms. Whittle and the plaintiff gave to Officer Gonzalez, that he could not have violated or a reasonable officer could find that the actions of Officer Gonzalez were lawful, i.e., he did not violate any clearly established law. The plaintiff has not presented in his briefs any argument contrary to that. So that clearly is the basis for finding qualified immunity or affirming the qualified immunity finding. In addition, the jury's finding that there was no violation of the constitutional right by any member of the ‑‑ any employee of the city of Compton goes directly to the first prong of the qualified immunity analysis, which is was it an actual violation of the constitutional right. The district court didn't address that prong in granting qualified immunity. But the jury's finding necessarily represents a separate ground for affirming qualified immunity in this case. Did I read the record correctly? Did the responding officer screen the arrest with his sergeant by telephone before he took Mr. Sin into custody? The only thing in the record regarding the communication with his supervisor was pertaining to the fact that Mr. Sin was in a wheelchair. So what are we going to do with this guy? Exactly. Should we take him back to the station or should we take him directly to the county jail facility? And he was told that because he's in a wheelchair, it's more appropriate for him to be taken to the county jail facility because they're better equipped to deal with that contingency. Mr. Choi, Mr. Mann limited this issue to the judge's charge on proximate cause. Now, you heard him. You heard his argument. Now, he is complaining that the charge that he requested was not covered in the charge given to the jury. Now, how do you answer his argument? You have the responsibility now to respond to that. I will respond to that, Your Honor. First of all, the probable cause instruction, which we cited in our papers, our instructions, the legality of which the plaintiff does not contest in his reply brief or even an argument here. Moreover, the instructions were broad enough so that it would have allowed more than – different arguments the plaintiff made at trial as to why the opposition had made the arrest. Why don't you be specific? What you are saying, the judge, the charge as given, really covered the law of probable cause. That's exactly – So what was wrong with what he wanted? Well, I don't think – well, first of all, the hunch instruction. Let me backtrack one bit. I believe Your Honor is absolutely correct that the instructions that were given regarding the cause of action against the city of Compton was complete, and additional instructions were not necessary. Moreover, the – for instance, the hunch instruction is pure argument. It's pure conjecture. There's no evidence in the record that Officer Gonzalez was acting upon a hunch. His testimony was, I talked to Ms. Whittle. I talked to the plaintiff. I considered all the circumstances. I considered the fact that a citizen's arrest form was filled out. Those are the reasons that he believed that there was probable cause. With regard to any of the other instructions – But your argument has to be that the judge's charge was broad enough to cover every possible concept that should have been considered by the jury. I think it was broad enough to cover all the evidence that the plaintiff presented at a trial for basis for finding absence of probable cause. Your secondary argument that his requested charge assumed facts that were not in the record. Yes, Your Honor. And that's thoroughly briefed on our papers. And one additional point regarding that question, because the plaintiff is not challenging the legal correctness of the instruction, they're essentially saying it wasn't – it was incomplete. This court should apply the abuse of discretion standard. And I think based on all the arguments that have been raised, there's no basis for finding that the district court abused its discretion in giving the jury this one complete probable cause instruction, which covered the principles of probable cause and also the elements of making a terrorist charge. Counsel, will you please respond to opposing counsel's objection to the closing argument? I believe those are arguments that were made on behalf of the casino by the counsel for casino. Sorry. Is casino counsel going to address this? I believe so. All right. But if the court doesn't have any other questions, I'm prepared to submit. Thank you, Mr. Choi. We'll hear from Mr. Warfield. Thank you. Good morning, Your Honors. Jay Allen Warfield on behalf of Crystal Park Casino. I'm going to start by answering that question. Sure. With respect to the argument made by counsel, the law permits an attorney in closing argument to refer to facts of common knowledge and draw illustrations from well-known facts. And that's exactly what counsel did in this case. He brought to the attention of the jury the fact that in our society, you cannot take threats lackluster. You have to take them seriously. Even if it appears that the person making the threat is possibly incapable, a young child, somebody that wasn't to be taken seriously, you can't ignore these kind of threats. And so the closing argument was entirely proper. As far as any prejudice, if it were improper. Was an objection made? Yes, Your Honor. All right. And in the charge to the jury, did the court emphasize to the jury that arguments of counsel are not evidence? Yes, Your Honor, both before and after the final argument was made. In addition, counsel for plaintiff, in his rebuttal argument, brought to the attention that these references were not evidence that the jury shouldn't rely on them. And the jury wasn't asked to rely on these facts. They were just brought to their attention to make the point that you have to take threats seriously. In this case, the jury's determination that the casino was not liable for false arrest necessarily found that there was reasonable cause for Ms. Whittle and the security guards to take the threat seriously, to call the police and to make a report. If there's no other questions, I don't have anything. I just want to ask a question about absolute immunity under California law as the person reporting a crime. Was that discussed at all below? I don't believe that was discussed at trial at all. Do you want to address it briefly now? Sure. There is a split of authority in California, as far as I understand, that a report to the police is absolutely privileged in all but one case. One court of appeal held in Fenelon v. Superior Court that a report to the police has to be made in good faith and honest belief. And that's a qualified privilege. It's my understanding that this issue is before the California Supreme Court right now. In any event, however, the jury's finding, the jury's determination that the casino was not liable, again, necessarily involved a finding that there was a good faith and honest report to the police. So both the qualified and absolute immunity standards are met. Thank you. Is there anything in particular that the Court would like me to address? No, whatever you want to cover on rebuttal. I think that it's worth looking at the Seventh Circuit case, cited at page 14 of the reply brief, which addresses the effect of Cornelius on who decides probable cause in a civil case. I've quoted it there. The arguments that were made were not at all generalized arguments, and that was a big part of the problem. I've quoted them pretty much verbatim in the opening brief at pages 16 through 18. They're very fact specific. They include names and dates and supposedly things like apparently no one thought he was serious or capable of carrying out what he was threatening, and three people ended up dead. That was the September 10th, 2001, Joseph Ferguson of Sacramento argument. Apparently the company didn't take it seriously. That was the October 14th, 1989, Joseph Westbecker, 47, argument. You can't really expect a 14-year-old to really take that seriously. That was the Santee, Andy Williams argument. All of these arguments purported to be facts of actual incidents with dates and times and places and what people told the police and why these things were not taken seriously, and it was geared to prove that the police acted reasonably in taking seriously this threat from someone who apparently could not have carried out the threat. And that's why these arguments were so improper and so prejudicial.
judges: Aldisert , Tallman, Rawlinson